

Randall C. Whattoff
Partner

office 808.550.9724 - email rwhattoff@cfhawaii.com

February 15, 2019

The Honorable Kenneth J. Mansfield
300 Ala Moana Blvd., C-338
Honolulu, Hawaii  96850

      Re:   *Ohana Military Communities, LLC, et al. v. Cara Barber*,
              Civil No. 18-00042 KJM, USDC

Dear Judge Mansfield:

      Defendant Cara Barber previously agreed to produce numerous categories of communications that are directly relevant to the claims in this case.  Ms. Barber has since taken the position that she will only produce communications that occurred during a six-month period between the parties' settlement agreement and the filing of the preliminary injunction motion.  This is plainly improper.  Communications prior to Ms. Barber's social media campaign are relevant to whether Ms. Barber acted negligently in making the statements in the campaign (an element of defamation).  Communications after the motion are relevant because, among other reasons, Ms. Barber's counterclaim involves conduct that occurred in 2017 or 2018.  Ms. Barber is also refusing to produce (i) communications that took place on her various social media platforms, despite the platforms' significance to this case, and (ii) two additional categories of communications, addressed below.  In sum, Plaintiffs are moving to compel responses to **Request Nos. 1, 3, 7, 9, 13, 18–19, 20–22, 25–27, and 29–30**.

      Pursuant to Local Rule 37.1, the parties exchanged several letters regarding their respective positions, and then conferred orally on February 4, 2019.  The parties agreed to submit simultaneous letter briefs to the Court by 4:00 p.m. on February 14, 2019.  The discovery deadline is April 12, 2019, and trial is scheduled to begin on June 12, 2019.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      In 2014, Ms. Barber and several other residents of Marine Corps Base Hawaiʻi ("MCBH") filed a putative class action (*Barber v. Ohana Military Communities, LLC,* CV 14-00217 HG-RLP ("*Barber I*")) claiming that Ohana Military Communities LLC ("Ohana") and Forest City Residential Management LLC ("FCRM") failed to disclose the existence of unsafe levels of pesticides in the soils around the homes at MCBH.  *See* Compl., ¶ 27 (ECF No. 1).  The case was settled in February 2016, and shortly thereafter Ms. Barber launched a social media campaign encouraging new lawsuits against Ohana and FCRM.  In June 2016, Ohana and FCRM filed a motion to enjoin the campaign in *Barber I*.

      Ohana and FCRM filed the instant Complaint against Ms. Barber on January 31, 2018 ("*Barber II*").  Ohana and FCRM allege that the social media campaign contained highly

The Honorable Kenneth J. Mansfield
February 15, 2019
Page 2



false and misleading statements about the conditions at MCBH and the conduct of Ohana and FCRM.  *Barber II* contains claims for defamation, false light and other torts.  Ms. Barber filed an eleven-count Counterclaim, but only one claim, for breach of the Settlement Agreement, remains in the case.  Ms. Barber alleges that, "[i]n 2017 and/or 2018, in response to a FOIA request by a known news agency, Reuter's News Service, the United States Navy sent documents describing the terms of the original settlement, including the settlement amount, thereby breaching" the settlement agreement.  Countercl. ¶¶ 20, 24 (ECF No. 19).

## II.     THE DISCOVERY AT ISSUE

Ohana served its first document requests on November 9, 2018.  Most of the requests were straightforward requests for communications.  For instance, Request No. 1 sought "All COMMUNICATIONS between YOU, on the one hand, and any PERSON, on the other, related to soil conditions at MCBH."  *Id.*  Numerous other requests followed this same pattern, but sought more specific categories of "COMMUNICATIONS between YOU . . . and any PERSON," including communications "related to pesticides at MCBH" (No. 3); communications "related to any pesticide, chemical, or compound that YOU contend is or has been present at MCBH, including but not limited to chlordane, heptachlor, heptachlor epoxide, aldrin, dieldrin, endrin and DDT" (No. 7); communications "related to or mentioning this lawsuit" (No. 9); communications "related to any investigation, research, inspection, testing, or study of soils, pesticides, dust, or any other aspect of the residential housing at MCBH" (No. 13)[1]; communications "related to, with, or mentioning the Hawaii Department of Health or any of its employees" (No. 19); and communications "related to the 'FOIA request' described in paragraph 20 of the COUNTERCLAIM" (No. 30).  A few requests were formulated differently, and were targeted at communications with groups of people on certain topics:  communications with "any news media outlet, blogger, reporter, or journalist related to MCBH" (No. 25); communications with "any news media outlet, blogger, reporter, or journalist related to soil issues at military housing" (No. 26); communications with "any PERSON who is leasing or has leased or resided in residential property from OHANA, FCRM, or HUNT COMPANIES . . . related to soil issues at military housing" (No. 27); and communications with "any PERSON who is leasing or has leased or resided in residential property from OHANA, FCRM, or HUNT COMPANIES . . . related to organo-chlorinated pesticides and/or related compounds such as chlordane, heptachlor, heptachlor epoxide, aldrin, dieldrin, endrin and DDT" (No. 29).  For each of the foregoing requests (collectively, the "MCBH Soil Requests"), Ms. Barber stated she "will produce nonprivileged documents in her possession," ***without any limitation on time period***.

In addition to the MCBH Soil Requests, this motion also seeks to compel a response to Request No. 18 (the "Chun Request"), which sought "All DOCUMENTS, including but not limited to any COMMUNICATIONS, related to, with, or mentioning Walter Chun."  Mr. Chun has been closely involved in Ms. Barber's allegations against Ohana and FCRM, and he has regularly sent letters to various governmental agencies and elected officials alleging environmental issues at MCBH.  Finally, Request Nos. 20–22 sought: "[f]or the time period from

---

[1] We will agree to limit this request to soils and pesticides, not dust or "other aspects."

Case 1:18-cv-00042-KJM   Document 86   Filed 02/15/19   Page 3 of 5   PageID #: 1285

The Honorable Kenneth J. Mansfield
February 15, 2019
Page 3



February 1, 2016 to the present, all COMMUNICATIONS between YOU, on the one hand, and Kyle Smith, Terrance Revere, or any other individuals at their respective law firms, on the other hand, related to"—"lawsuits being filed against OHANA, FCRM, or HUNT COMPANIES" (No. 20); "YOUR WEB AND SOCIAL MEDIA SITES" (No. 21); and "current or former residents of MCBH residential housing ( other than yourself or YOUR family) (No. 22).

### III.     THE MCBH SOIL REQUESTS [Request Nos. 1, 3, 7, 9, 13, 19, 25–27, and 29–30]

#### A.     Time Period

In her initial responses to the MCBH Soil Requests, Ms. Barber recognized the appropriateness of the requests and agreed to produce all non-privileged documents. But she never actually did so, and she is now taking the position that she will only produce documents for the time period between the *Barber I* settlement on February 12, 2016, and the filing of the preliminary injunction motion on June 15, 2016. Ms. Barber claims that communications prior to the settlement agreement are not relevant because the settlement included a release, and communications after the preliminary injunction motion are not relevant because the issue of the "Navy's release of a confidential settlement memorandum . . . has essentially been nullified by Judge Mansfield's ruling that the settlement agreement . . . ." Both arguments fail, as these communications are "reasonably calculated to lead to the discovery of admissible evidence"—indeed, they are highly relevant to Ohana and FCRM's claims and defenses.

Communications ***prior to*** the settlement agreement are highly relevant to Plaintiffs' claim for defamation, which requires Plaintiffs to prove "fault amounting at least to negligence on the part of the publisher." *Nakamoto v. Kawauchi*, 142 Haw. 259, 270, 418 P.3d 600, 611 (2018). In order to prove fault, Plaintiffs will need to rely upon the information that Ms. Barber had prior to beginning her 2016 social media campaign. To the extent that Ms. Barber learned facts that contradicted her statements in 2013, 2014, or 2015, or to the extent she failed to conduct a reasonable investigation, that would be directly relevant to whether she acted negligently (or with some other degree of fault) in making the 2016 statements that form the basis for this case. Because fault is an element of defamation, it is axiomatic that plaintiffs are required to rely upon communications and documents prior to the defamatory statements. Ms. Barber's argument that the settlement agreement somehow made pre-settlement communications irrelevant misses the point of these documents. Plaintiffs are ***not*** seeking Ms. Barber's pre-settlement communications to suggest that any of them could support independent claims for defamation; Plaintiffs are seeking Ms. Barber's pre-settlement communications to show her state of mind, her intent, and her body of knowledge prior to making the statements.

Communications that Ms. Barber made ***after*** the preliminary injunction motion are also highly relevant. If Ms. Barber had communications with third-parties discussing her campaign, discussing the specific statements she made in the campaign, or even discussing the preliminary injunction hearing itself, such communications are relevant to this case. Ms. Barber's statements are also highly relevant to her Counterclaim for breach of the settlement agreement. According to Ms. Barber, "[i]n May 2017, [she] submitted a FOIA request [to the Navy] for 'chlordane or pesticide management records' dated 1995 to present." Def.'s Response

The Honorable Kenneth J. Mansfield
February 15, 2019
Page 4



to Pl.'s First Interrog., No. 10 (Dec. 21, 2018).  As part of its response to that request, the Navy "released Forest City's highly confidential Settlement Memo to [Ms. Barber], along with numerous other records." *Id.*  Ms. Barber did not tell anyone at Ohana or FCRM about this disclosure.  "Shortly after those records were released," Ms. Barber communicated with a freelance journalist, and the freelance journalist submitted her own FOIA request to the Navy. *Id.*  The Navy then disclosed the same settlement memorandum, which is the basis for Ms. Barber's claim against Ohana.  Ohana plainly has a right to discover Ms. Barber's communications with this freelance journalist and any other third-parties related to the settlement memoranda.  Such communications are directly relevant to Ohana and FCRM's defenses (*e.g.*, that Ms. Barber caused the breach for which she is suing; Unclean Hands; etc.).  With respect to the Court's recent ruling on the motion to seal, it is unclear how it would "nullify" this argument.  The only way that this argument could be "nullified" is if Ms. Barber withdraws her claim.

        **B.**        **Communications Sent Through Social Media**

        In addition to only agreeing to produce documents within a short timeframe, Ms. Barber has also refused to produce communications that she sent or received through her social media accounts.  There is no basis for this refusal.  Ms. Barber has previously testified that she uses Facebook "as the way to communicate with families," of which there are more than 1,500 that follow her page.  8/3/16 Trans., 25:12–13, 34:9–13.  Ms. Barber has also testified that her Facebook followers frequently interact with her on Facebook. *See id.* at 46:1–6.  Given Ms. Barber's use of social media as the main platform for her statements (which are the subject of the Complaint), her communications on these platforms are highly relevant and must be produced.  Facebook provides specific guidance on how to download this information. *See, e.g.*, https://www.facebook.com/help/212802592074644.

**IV.**        **THE CHUN REQUEST** [Request No. 18]

        Walter Chun was an employee (or contractor) of Metcalf Construction, a contractor that performed work at MCBH prior to Ohana.  Metcalf Construction filed suit against the United States related to the cost of certain soil work, *see, e.g., Metcalf Const. Co. v. United States*, 742 F.3d 984 (Fed. Cir. 2014), and Mr. Chun thereafter became a vocal critic of soil issues at MCBH. *See, e.g.*, https://www.slideshare.net/civilbeat/letter-from-dr-walter-chun-to-doh.  Mr. Chun even wrote a book about the soil issues called "The Contract from Hell."

        During the evidentiary hearing on the preliminary injunction motion, Ms. Barber testified that the basis for many of the statements she made in the social media campaign—such as her claim that conditions at MCBH "remain at least 20 times higher than EPA safety recommendations"—were conversations with Mr. Chun. *See, e.g.*, 8/5/16 Trans., 68:11–68:15 (questioning by Kyle Smith) ("Q. And we're going to hear from Dr. Chun, but—so I don't mean to belabor the point, but this part of the statement where you're talking about the 20 times, do you agree this is partly based upon your conversations with Dr. Chun? A. ***Oh, absolutely***.") (emphasis added); *id.* at 109:12–15 ("Q. And you testified that you relied on a number of different conversations with Mr. Chun and with Eric Sadoyama; is that correct?  A. Correct."). Ms. Barber also stated that she talked to Mr. Chun and relied on statements he made when



claiming that residents were exposed to "much higher lifetime rates of cancer and other diseases." *Id.* at 59:20–61:19.

Despite their clear relevancy, Ms. Barber claims that her communications with Mr. Chun are privileged because he has been designated as an expert witness. This is not correct for at least two reasons. **First**, Mr. Chun is purporting to provide an opinion on the reasonableness of Ms. Barber's investigation. *See, e.g.*, Chun Report at 4 ("Overall Opinion: . . . Ms. Barber's actions and efforts to investigate, research, learn, educate and to make families aware of the unsatisfactory and unsafe conditions created by the Plaintiff's military family housing project was truthful and based upon accurate information."); *id.* at 11 ("The accusation that Ms. Barber did not investigate the information and statements she made on Facebook is false."). Therefore, Ms. Barber's communications with him on this issue are not protected. *See* Fed. R. Civ. Proc. 26(b)(4)(C)(ii)–(iii). **Second**, Ms. Barber is relying on advice provided by Mr. Chun to justify the fact that she made the relevant statements. She has therefore waived any privilege as to communications with Mr. Chun. *See, Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*, Civ. No. C 17-05211 WHA, 2017 WL 4642324, at *5 (N.D. Cal. Oct. 17, 2017) ("Where a party raises a claim, which in fairness to its adversary requires it to reveal the information or communication that claim is predicated upon, it has implicitly waived any privilege over that communication.") (citations omitted); *Ojmar US, LLC v. Sec. People, Inc.*, Civ. No. 16CV04948HSGMEJ, 2017 WL 2531472, at *2 (N.D. Cal. June 12, 2017) (noting that reliance on advice-of-counsel defense waives privilege).

**V.   THE SMITH/REVERE REQUESTS** [Request Nos. 20–22]

Communications between Ms. Barber and Smith/Revere about recruiting new residents to file new lawsuits against Ohana and FCRM are not privileged. *See, e.g., Gramercy Grp., Inc. v. D.A. Builders, LLC*, Civ. No. 16-00114 JMS-KSC, 2017 WL 5179530, at *2 (D. Haw. Nov. 8, 2017) ("To be protected by the privilege, 'confidential communications [must be] made for the purpose of facilitating the rendition of professional legal services.'"). Recognizing this, Judge Gillmor ordered Ms. Barber to produce "[a]ll communications from January 5, 2016 to August 11, 2016 that were made between Plaintiff Cara Barber and the law firms of Revere & Associates and Lynch, Hopper, Salzano & Smith regarding new lawsuits and new clients concerning disputes as to housing at Marine Corps Base Hawaii[.]" *See Barber I*, Minutes (ECF No. 330) (Aug. 12, 2016); *see also* 8/3/2016 Trans. 33:3–40:22. To the extent that additional documents exist responsive to these requests, Ms. Barber should be ordered to produce them. *See, e.g., Ocean Mammal Inst. v. Gates*, Civ. No. 07-00254DAELEK, 2008 WL 2185180, at *10 (D. Haw. May 27, 2008) ("The party asserting the [attorney-client] privilege bears the burden of establishing that it applies to the documentation, etc., sought by the opposing party. Blanket assertions are extremely disfavored.") (citations omitted).

Sincerely,
/s/ Randall C. Whattoff
Joachim Cox
Randall Whattoff
Kamala Haake