
Randall C. Whattoff
Partner

office 808.550.9724 - email rwhattoff@cfhawaii.com

March 6, 2019

The Honorable Kenneth J. Mansfield
300 Ala Moana Blvd., C-338
Honolulu, Hawaii 96850

      Re:    *Ohana Military Communities, LLC, et al. v. Cara Barber*,
             Civil No. 18-00042 KJM, USDC

Dear Judge Mansfield:

      The subpoena that Defendant Cara Barber ("Barber") served on Becker Communications, Inc. ("Becker"), and the similar document request she served on Ohana Military Communities, LLC ("Ohana") and Forest City Residential Management, LLC ("FCRM") (collectively, "Plaintiffs"), should be quashed or modified because the requests seek privileged communications that were made during Becker's retention as a litigation consultant for Ohana and FCRM in *Barber v. Ohana,* CV 14-00217 HG-RLP ("*Barber I*"). Indeed, Ms. Barber and her attorneys ***previously agreed*** that such documents constituted work product and/or were privileged. Nothing has changed that would alter that analysis. In addition, the subpoena and document request should be quashed because they are overly broad, unduly burdensome, and not "proportional to the needs of the case." The requests seek documents over a more than 15-year period that have absolutely nothing to do with soils, pesticides, or this case.

      Pursuant to Local Rule 37.1, counsel for Ms. Barber and Plaintiffs met and conferred on February 27, 2019. Counsel for Plaintiffs understood that the purpose of the meet-and-confer was to address the recently served Becker subpoena, and asked if we should "loop-in Becker's counsel? I am not sure we can have an effective meet and confer without them." Counsel for Ms. Barber responded that "I think everyone is available at 9. We will circulate a call-in number." However, Becker's counsel, who has served written objections to the subpoena, did not participate in the meet-and-confer and, to our knowledge, has not agreed to this process. The discovery deadline is April 12, 2019, and trial is scheduled to begin on June 12, 2019.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

      Becker has been Plaintiffs' public relations firm in Hawaiʻi since 2003. In that capacity, Becker has assisted Plaintiffs on numerous projects related to Plaintiffs' business on Oahu, ranging from award nominations, to special events, to media relations. Plaintiffs believe that Becker has handled all of their press releases and media events since 2003. Every time Plaintiffs have hosted a ground breaking, held a completion ceremony, or conducted a similar promotional event, Becker was responsible for coordinating those events. "Becker has assisted [Ohana and FCRM] on numerous projects related to MCBH and other military communities on



Oahu.  ***The overwhelming majority of Becker's work has nothing to do with pesticide issues.***"
*See Barber I*, ECF No. 78-2.

Becker was retained at the outset of *Barber I* to assist Ohana and FCRM on the class action litigation.  Ohana, FCRM, and Becker entered into a new, separate agreement to provide these services (the "Litigation Consultant Agreement").  Becker was part of the litigation team, and corresponded with counsel regarding public relations and communications issues related to the putative class action.  Becker's services included, among other things, providing general counsel on public relations strategy related to the class action; identifying and tracking information related to the class action and the claims in the class action; developing and implementing a media and communications strategy related to the class action; and acting as a primary contact for media related to the class action and underlying issues.

In *Barber I*, Ms. Barber served a similar subpoena on Becker in 2015, and following an exchange of letters and a meet and confer, the class representatives (including Ms. Barber) and their counsel agreed that documents drafted after Becker's retention as a litigation consultant were privileged.  In her opposition to Ohana and FCRM's motion to quash or modify the subpoena *in Barber I*, Ms. Barber stated:

> After the parties exchange letters on this issue, counsel for the parties met and conferred . . . and agreed to the following terms:  . . .  With respect to Becker Communications, the parties agree that "there is generally not a privilege or similar protection for documents that predate [Becker's] retention as an expert in this litigation, but that ***communications between counsel for Defendants and Becker thereafter are privileged***."

*Barber I*, ECF No. 92 at 4 (emphasis added).  At the hearing on the motion to quash that subpoena, the class action plaintiffs withdrew their subpoena after Judge Chang suggested it was overbroad and unduly burdensome.

## II.     THE DISCOVERY AT ISSUE

On November 19, 2018, Ms. Barber served her First Request for Production of Documents upon Plaintiffs seeking, in part, "[a]ll COMMUNICATIONS by and between YOU and Becker Communications."  Req. No. 48.  Plaintiffs objected to the request on the grounds that "it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited in time or scope."  Plaintiffs noted that there "is no limitation on time or subject matter."  Plaintiffs also objected that the request "seeks documents that are protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other privilege or protection."  Plaintiffs did not receive any response to these objections.

Two months later, on February 12, 2019, Ms. Barber served a subpoena on Becker (the "Subpoena").  The document requests in the Subpoena seek:


> [A]ny and all documents related to public relations services you have performed for Ohana Military Communities, LLC, Ohana Military Communities, Inc., Forest City Residential Management, LLC, or the Hunt Companies, that it [*sic*] is in any way related to residential housing at Marine Corps Base Hawaii, including, without limitation, proposals, contracts, agreements in writing, written correspondence, emails, surveys, survey results, focus group proposals or results, reports, press releases or other documents of any nature related to issue management, crisis communications, advertising, or other public relations services.

On February 18, 2019, counsel for Becker sent a letter to Ms. Barber setting forth its objections pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure. The letter contains a number of objections, including that the Subpoena "seeks documents subject to work product protection and Becker's client(s) have not authorized Becker to release such information." Becker further objected that the Subpoena is "overbroad, unduly burdensome and/or disproportionate to the needs of the case" because (1) "it seeks internal communications or emails between or among employees of Becker"; "it is not limited to any particular period of time [and] Becker has provided services relating to the Marine Corps Base Hawaii for over ten (10) years"; and it seeks "information pertaining to entities that are not parties to the case (*i.e.*, 'Ohana Military Communities, Inc.' and 'the Hunt Companies')." Becker also made a number of other objections. Becker indicated that "[b]ased on the foregoing objections, Becker does not currently intend to produce documents in response to the Subpoena."

## III. ARGUMENT

### A. Documents Related to Becker's Services Under the Litigation Consultant Agreement Are Protected by Work Product and Privilege

Plaintiffs' communications with Becker during Becker's retention as a litigation consultant constitute work product. The work product doctrine "provides a qualified immunity for material prepared in anticipation of litigation by a party or its representative." *Ocean Mammal Inst. v. Gates*, Civ. No. 07-00254DAELEK, 2008 WL 2185180, at *10 (D. Haw. May 27, 2008). "In order to be protected under the work product doctrine, the material must meet the following conditions: (1) be a document or tangible thing; (2) be prepared in anticipation of litigation or for trial; and (3) be prepared by or for a party, or by or for its representative." *Id*. Moreover, Rule 24(b)(4)(d) makes clear that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."

It is undisputable that in early 2014, Becker was expressly retained for the purposes of responding to the *Barber I* class action. Becker and Plaintiffs entered into a written Litigation Consultant Agreement whereby Becker expressly agreed to provide services related to



the *Barber I* class action. Becker's services included providing general counsel on public relations strategy related to the class action; identifying and tracking information from various sources related to the class action and the claims in the class action; developing and implementing a media and communications strategy for the class action; and acting as a primary contact for media requesting information related to the class action and underlying issues. The documents and communications that were created in the course of providing these services were indisputably "prepared in anticipation of litigation" and prepared "for a party to the litigation."

Ms. Barber has not identified any exceptional circumstances that might somehow justify obtaining these documents. During the meet-and-confer, counsel for Ms. Barber vaguely asserted that the communications were somehow relevant to respond to Plaintiffs' public relations expert. Plaintiffs' expert prepared a report outlining the damages caused by Ms. Barber's 2016 social media campaign, and provided an estimate of the cost to respond to the social media campaign. Ms. Barber retained her own expert, Keoki Kerr, who has provided a responsive report. Plaintiffs' communications with Becker in *Barber I*—***which occurred prior to the settlement agreement and prior to the 2016 social media campaign that is the subject of this lawsuit***—are irrelevant to any of those issues.

Plaintiffs' communications with Becker are also protected by the attorney-client privilege because the communications with Becker involved litigation strategy and advice. *See, e.g.*, *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219-21 (S.D.N.Y. 2000) (holding that attorney-client privilege and work-product applied where public relations firm "was, essentially, incorporated into Sumitomo's staff to perform a corporate function that was necessary in the context of the government investigation, actual and anticipated private litigation, and heavy press scrutiny obtaining at the time"); *Grand Canyon Skywalk Dev. LLC v. Cieslak*, Civ. No. 2:13-CV-00596-JAD, 2015 WL 4773585, at *15 (D. Nev. Aug. 13, 2015) ("In the case of a public relations consultant who is hired to conduct a media relations campaign on behalf of the client with respect to a lawsuit or legal dispute, it is important that the client's counsel be able to provide confidential legal advice to the consultant so that he can perform his duties on behalf of the client in accordance with that legal advice."); *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1204 (N.D. Cal. 2015) (holding that the public relations consultant acted as the defendant's "functional employee for the purposes of the attorney-client privilege," as the consultant was hired when "the defendant faced regulatory action and potential litigation" and the consultant "acted as the public face of the company and provided information to the defendant's legal staff that was useful and necessary to evaluate legal strategy").

Finally, as noted above, Ms. Barber and her attorneys have ***previously agreed*** that these communications are protected by the work product doctrine and/or are privileged.

B.  **The Remaining Requests Are Also Improper**

The other portions of the Subpoena and document request should be quashed because they have nothing to do with the case. The document request to Plaintiffs seeks "[a]ll COMMUNICATIONS by and between YOU and Becker Communications," without any limitation on time period or subject matter. As discussed in more detail above, Becker has been



providing services to Plaintiffs for more than **15 years** and the "overwhelming majority of Becker's work has nothing to do with pesticide issues." Rather, this work relates to such issues as award nominations, special events, and media relations for Plaintiffs' business and projects. These documents are irrelevant to the present dispute, and Ms. Barber's request is overbroad, unduly burdensome and disproportionate to the needs of the case. *See, e.g.*, *Fratus v. Mazyck*, Civ. No. 216CV0076KJMEFBP, 2017 WL 4945213, at *6 (E.D. Cal. Nov. 1, 2017) (holding that a document request seeking entire employee files was "overbroad in time and scope" and thus "unduly burdensome" and not "proportional to the needs of this case"); *Grindling v. Loo*, Civ. No. 06-00460 JMSKSC, 2006 WL 3191237, at *3 (D. Haw. Oct. 31, 2006) ("Grindling's request for discovery, seeking 'all Documents and Tangible things in [Defendants] possession concerning the above entitled case' is clearly overbroad , unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence."). At an absolute minimum, the requests should be limited to issues that arose after the settlement agreement was entered into in February 2016 and the social media campaign began. *See* ECF No. 100 at 5 (finding that pre-settlement communications were not relevant and were disproportionate to the needs of the case).

The Subpoena to Becker is even more problematic. Indeed, it is unclear how it could even be addressed as part of this process given that Becker's counsel was not included in the meet-and-confer and has presumably not agreed to use LR 37.1 to resolve these issues. Becker has made numerous written objections that must be evaluated in order to address the Subpoena. Under the Subpoena, Ms. Barber seeks "any and all documents related to public relations services" that Becker performed that is "in any way related to residential housing at Marine Corps Base Hawaii," without any time or further subject matter limitation. This is unduly burdensome for a third-party such as Becker (a small, local public relations business), as it is a blanket demand on a nonparty and does not provide temporal limitations, does not contain any subject matter limitation, and does not specify any specific individuals from whom documents are sought. *See, e.g.*, *Rucker v. Air Ventures Hawaii, LLC*, Civ. No. CV 16-00492 KSC, 2017 WL 2805490, at *3 (D. Haw. June 28, 2017) (quashing subpoenas where "[t]here are no limitations as to time or breadth of the request"); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." (citations omitted)).

Sincerely,

COX FRICKE LLP

/s/ Randall C. Whattoff

Joachim P. Cox
Randall C. Whattoff
Christine A. Terada