IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| OHANA MILITARY COMMUNITIES, LLC and FOREST CITY RESIDENTIAL MANAGEMENT, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>CARA BARBER,<br><br>　　　　　　　Defendant. | CIVIL NO. 18-00042 KJM<br><br>MEMORANDUM IN SUPPORT OF MOTION |

**MEMORANDUM IN SUPPORT OF MOTION**

## I.     INTRODUCTION

This matter arises from Defendant Cara Barber's social media campaign which – in coordination with her attorneys – spread false and misleading statements about the conditions at MCBH and the conduct of Ohana Military Communities, LLC ("Ohana") and Forest City Residential Management, LLC ("Forest City") (collectively, "Plaintiffs") in an effort to drive new clients to the attorneys who had represented Ms. Barber in the putative class action.  The Complaint contains claims for defamation, false light, and other torts, stemming from Ms. Barber's social media campaign, and Ohana accordingly seeks communications that provide information relating to the false statements she made.

This Court has already made determinations regarding the discovery of certain categories of communications, such as Ms. Barber's communications on social media, as well as her communications with Walter Chun.  The category that remains for the Court to determine is the communications between Ms. Barber and the attorneys she promoted in her social media posts, Kyle Smith and Terrance Revere, which took place following the settlement agreement.  As these communications pertain to Ms. Barber's social media campaign and the recruitment of new residents to file new lawsuits against Plaintiffs, such communications are not privileged and are relevant and proportional to the litigation.  Indeed, Judge Gillmor already reached this precise conclusion when she ordered Ms. Barber to produce all such communications by August 26, 2016.  By this Motion, Plaintiffs only seek those additional communications that may have taken place after Ms. Barber's previous production (or any documents that were somehow omitted from her previous production).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The instant Complaint stems from a post-settlement dispute between Ms. Barber and Plaintiffs, related to a lawsuit brought four years ago, *Barber, et al. v. Ohana Military Communities, LLC, et al.*, CV 14-00217 HG-RLP ("*Barber I*"). The history of that case, as it pertains to this Motion, is summarized briefly below.

### A.    *Barber I*

In April 2014, Ms. Barber and three other current and former residents of Marine Corps Base Hawaiʻi ("MCBH") filed a putative class action claiming that Ohana and Forest City failed to disclose the existence of unsafe levels of organo-chlorinated pesticides ("OCPs") in the soils around the homes on MCBH. Complaint, ECF No. 1 ("Compl.") ¶ 27; Counterclaim, ECF No. 19 ("Countercl.") ¶ 8.  The case was settled in February 2016, and the settlement agreement included a confidentiality provision, a non-disparagement provision, and a provision that prohibited Ms. Barber from participating in further lawsuits against Ohana and Forest City.  Separate Concise Statement of Facts in Support of Plaintiffs' Summary Judgment Motion, ECF No. 73 ("CS") ¶ 1.

Plaintiffs have alleged that, almost immediately following the settlement agreement, Ms. Barber and her attorneys initiated a social media campaign, in which Ms. Barber made numerous defamatory and otherwise unlawful statements about Ohana and Forest City.  Compl. ¶¶ 31-32.  Plaintiffs thereafter filed a Motion for Preliminary Injunction ("PI Motion").  ECF No. 27-3; 11/30/18 Order at 6.  The PI Motion argued that Ms. Barber's social media campaign should be enjoined because it violated three provisions of the settlement agreement.  ECF No. 27-3 at 10-26.

During the proceedings for the PI Motion, Plaintiffs requested all communications between Ms. Barber and her attorneys related to the solicitation of new clients. *See* 8/12/2016 Trans. 13:11-23. Following Plaintiffs' request, on August 12, 2016, Judge Gillmor ordered Ms. Barber to produce:

> All communications from January 5, 2016 to August 11, 2016 that were made between Plaintiff Cara Barber and the law firms of Revere & Associates and Lynch, Hopper, Salzano & Smith regarding new lawsuits and new clients concerning disputes as to housing at Marine Corps Base Hawaii.

*Barber I*, Minutes (ECF No. 330) (Aug. 12, 2016); *see also* 8/3/2016 Trans. 33:3–40:22.

**B.    *Barber II***

Plaintiffs filed the instant Complaint against Ms. Barber on January 31, 2018 (*Barber II*), which is based upon the same social media campaign that formed the basis for the PI Motion in *Barber I*, but it seeks damages rather than injunctive relief and is based upon non-contractual claims. *Barber II* contains claims for defamation, false light, tortious interference with contract, tortious interference with prospective economic advantage, and violations of the Lanham Act. *See generally,* Compl.

Ms. Barber filed an eleven-count Counterclaim, but only one claim, for breach of the settlement agreement, remains in the case. As to this claim (Count I), Ms. Barber alleges that, "[i]n 2017 and/or 2018, in response to a FOIA

request by a known news agency, Reuter's News Service, the United States Navy sent documents describing the terms of the original settlement, including the settlement amount, thereby breaching" the settlement agreement. Countercl. ¶¶ 20, 24 (ECF No. 19); *see also* 11/30/18 Order at 4-5, 10.

## III.   THE DISCOVERY AT ISSUE

Ohana served its first document requests on November 9, 2018. Following Ms. Barber's production, there was a dispute regarding three categories of documents. The first category seeks communications between Ms. Barber and third parties relating to the soil and pesticides at MCBH. As one example, Ohana seeks "All COMMUNICATIONS between YOU, on the one hand, and any PERSON, on the other, related to soil conditions at MCBH." Ex. 1 at 1 (Req. No. 1). The second category seeks Ms. Barber's communications with Walter Chun. In this category, Ohana requests "All DOCUMENTS, including but not limited to any COMMUNICATIONS, related to, with or mentioning Walter Chun." Ex. 1 at 6-7 (Req. No. 18).

This Motion concerns the third category of document requests, which seeks communications between Ms. Barber and her attorneys. In this category, Request Nos. 20-22 seek: "[f]or the time period for February 1, 2016 to the present, all COMMUNICATIONS between YOU, on the one hand, and Kyle Smith, Terrance Revere, or any other individuals at their respective law firms, on

the other hand, related to" – "lawsuits being filed against OHANA, FCRM, or

HUNT COMPANIES" (No. 20); "YOUR WEB AND SOCIAL MEDIA SITES"

(No. 21); and "current or former residents of MCBH residential housing (other

than yourself or YOUR family) (No. 22).  Ex. 1 at 7-8.

    At the meet-and-confer, Ms. Barber relied upon three general

objections in response to the requests: (1) that the relevant time frame for

discoverable communications and documents is between the *Barber I* settlement

and the filing of the PI Motion; (2) that communications with Walter Chun are

protected by Rule 26(b)(4) of the Federal Rules of Civil Procedure; and, (3) that

communications with her attorneys are protected by the attorney-client privilege.

    On February 15, 2019, the parties filed letter briefs, requesting

expedited discovery assistance pursuant to LR37.1.  ECF Nos. 86, 87.  The Court

held a hearing on February 22, 2019 (ECF No. 91), and issued its order on

February 25, 2019.  Discovery Order (ECF No. 100).

    In its Discovery Order, the Court established the following parameters

for Ms. Barber's production of documents:

> • Except as it pertains to communications with Walter
>   Chun, "the starting point for discovery of Barber's
>   communications is February 13, 2016, the day after the
>   settlement agreement" and "the end date for discovery of
>   Barber's communications is January 31, 2018, the date
>   Plaintiffs filed their Complaint."  Discovery Order at 5-6.

- Ms. Barber must produce responsive social media communications.  *Id*. at 6.

- Communications between Ms. Barber and Mr. Chun must be produced, regardless of time, *id*. at 7, and all communications among Ms. Barber, her attorneys, and Mr. Chun, must be produced, regardless of time (with the exception that if Ms. Barber is not relying on responsive communications in her defense, such communications should be identified and supported with a privilege log). *Id*. at 8.  Communications between Ms. Barber's attorneys and Mr. Chun need not be produced except as provided in Fed. R. Civ. P. 26(b)(4)(C).  *Id*. at 9.

With respect to the various communications between Ms. Barber and her counsel, the Court directed "the parties to meet and confer, and if necessary, Plaintiffs are granted leave to file a formal discovery motion on the issue."  *Id*. at 9. Accordingly, the parties held a meet and confer on March 13, 2019.  Declaration of Randall Whattoff ("Whattoff Decl.") ¶ 2.

## IV.   LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure[1] allows for discovery of any matter that is "relevant to any party's claim or defense and proportional to the needs of the case . . . ."  A party may move for an order compelling discovery after a good faith attempt to confer with the party failing to respond.  *Beavers-*

---

[1] References to the "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

*Gabriel v. Medtronic, Inc.*, Civ. No. 13-00686 JMS-RLP, 2015 WL 12746717, at

*1 (D. Haw. Mar. 24, 2015).

## V.   ARGUMENT

### A.   The Requested Communications Between Ms. Barber and Her Attorneys Are Not Protected Under the Work Product Doctrine or Attorney-Client Privilege

Communications between Ms. Barber, on one hand, and Mr. Smith

and Mr. Revere, on the other hand, about recruiting new plaintiffs or their new

social media campaign are not protected under the work product doctrine or

attorney-client privilege.

First, the work product doctrine protects "written statements, private

memoranda and personal recollections prepared or formed by an adverse party's

counsel in the course of his legal duties." *Reading Int'l, Inc. v. Malulani Grp.,*

*Ltd.*, Civ. No. CV 13-00133 JMS-KSC, 2014 WL 12597414, at *2 (D. Haw.

Mar. 31, 2014) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

Second, it is axiomatic that "[t]o be protected by the [attorney-client]

privilege, 'confidential communications [must be] made for the purpose of

facilitating the rendition of professional legal services.'" *Gramercy Grp., Inc. v.*

*D.A. Builders, LLC*, Civ. No. 16-00114 JMS-KSC, 2017 WL 5179530, at *2

(D. Haw. Nov. 8, 2017).  Further, "because the attorney-client privilege has the

effect of withholding relevant information from the factfinder, it is applied *only*

when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Potter v. United States*, Civ. No. 02-CV-0632-H (POR), 2002 WL 31409613, at *5 (S.D. Cal. July 26, 2002) (emphasis added) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976) (other citation omitted)).  Here, Ohana seeks communications that clearly were *not* made for the purpose of obtaining legal advice.  That is, the communications between Ms. Barber and her attorneys during the social media campaign did not involve the rendition of professional legal services; instead, the communications were a coordinated effort to solicit new clients to the Smith and Revere law firms and fulfill Cara Barber's vendetta against Ohana and Forest City.  These communications are clearly not privileged.  *See, e.g., United States v. Singhal*, 800 F. Supp. 2d 1, 9 (D.D.C. 2011) (noting that communications are "not privileged where attorney acted as a policy advisor, media expert, business consultant, banker, referee, or friend." (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)); *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 568 (N.D. Ill. 2007) ("The attorney-client privilege only extends to those communications involving legal advice, not business advice or other technical information.").

Indeed, recognizing that the requested communications are not protected or privileged, Judge Gillmor in *Barber I* ordered Ms. Barber to produce "[a]ll communications from January 5, 2016 to August 11, 2016 that were made

between Plaintiff Cara Barber and the law firms of Revere & Associates and Lynch, Hopper, Salzano & Smith regarding new lawsuits and new clients concerning disputes as to housing at Marine Corps Base Hawaii." *Barber I*, Minutes (ECF No. 330) (Aug. 12, 2016); *see also* 8/3/2016 Trans. 33:3-40:22.

To the extent that Ms. Barber maintains that such communications are privileged, appropriate objections must be made.  Instead, in response to every request at issue, Ms. Barber used the same boilerplate objection, as follows:

> Defendant Barber objects to this request on the grounds that it calls for the disclosure of attorney-client work product and communications protected by the attorney-client privilege.

Ex. 1 at 7-8.  Such boilerplate objections are simply not acceptable.  *See, e.g.*, *Marine Lumber Co. v. Precision Moving & Storage, Inc.*, Civ. No. 16-00365 LEK-RLP, 2017 WL 3568668, at *3 (D. Haw. Aug. 16, 2017), *aff'd*, Civ. No. 16-00365 LEK-RLP, 2017 WL 4678470 (D. Haw. Oct. 17, 2017) (holding that the defendant's use of "a boilerplate objection or a statement that it has no responsive documents" in response to each document request is "deficient"); *Waikiki v. USPLabs, LLC*, Civ. No. 13-00639 LEK-KSC, 2015 WL 13652910, at *2 (D. Haw. June 25, 2015) ("Defendant simply cannot rely on boilerplate objections.").

Ohana seeks non-privileged communications between Ms. Barber and her attorneys that were made in coordination with Ms. Barber's social media

campaign following the settlement agreement.  As discussed below, such communications are highly relevant to all the claims in the instant Complaint and should therefore be produced.

### B.    The Requested Communications Between Ms. Barber and Her Attorneys Are Relevant and Proportional

Ms. Barber's post-settlement communications with Mr. Smith and Mr. Revere are relevant to all of Plaintiffs' claims, which arise from Ms. Barber's social media campaign.  *See* Rule 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . "); *Kim v. Crocs, Inc.*, Civ. No. CV 16-00460 JMS KJM, 2017 WL 10379587, at *2 (D. Haw. Nov. 28, 2017) ("A matter is relevant if it 'reasonably could lead to other matter that could bear on, any issue that may be the case.'" (citation omitted)).  Here, the relevancy of the requested communications is made clear by examples of e-mails that were produced in response to Judge Gillmor's order in *Barber I.*  These e-mails show that Ms. Barber and her attorneys had a carefully coordinated campaign, in which Ms. Barber spread false information related to MCBH housing in an attempt to drive new clients to Mr. Smith and Mr. Revere.  A few examples are shown below.

- On April 1, 2016, Ms. Barber e-mailed Mr. Smith and Mr. Revere asking for feedback in the video she was producing.  She informed them that "[i]n the video, I provide your names and contact information as attorneys

that families can contact if interested in pursuing their potential claims."  Ex. 2.

- On May 10, 2016, Ms. Barber e-mailed Mr. Smith that she liked the solicitation letter.  *See* Ex. 3.  She forwarded a series of talking points she apparently intended to use in her discussions with prospective clients.  The talking points included:  "Hazardous contamination *is confirmed* throughout MCBH and Pearl Harbor neighborhoods"; "Their failure to inform you about the *hazardous contamination and serious health risks* means you have strong legal claims you can pursue against them"; "A current or former MCBH or Pearl Harbor resident who pursues these legal claims can seek the following: 100% Reimbursement of BAH/Rents Paid"; and "Other current and former MCBH residents have pursued these strong legal claims against Forest City.  Their lawsuit settled for an undisclosed amount." *Id.* (emphases added).

- On May 13, 2016, Mr. Smith told Ms. Barber that the solicitation letter was working:  "We have had dozens and dozens of emails/calls and probably 40-50 who have already signed up.  I also gave [Forest City] the delicious news yesterday that new mediation demands/claims were on their way."  Ex. 4.

These examples show the intent and planning behind Ms. Barber's social media campaign, and demonstrate that communications between Ms. Barber and her attorneys are directly relevant to all of Plaintiffs' claims for defamation, false light, tortious interference with contract, tortious interference with prospective economic advantage, and false advertising under the Lanham Act.  The requested communications are particularly relevant to Plaintiffs' claims for tortious interference with contract and tortious interference with prospective economic

advantage, as the coordinated campaign aimed to instill fear and distrust in MCBH

housing and resulted in damages.  Moreover, Plaintiffs' claim for defamation

requires Plaintiffs to prove "fault amounting at least to negligence on the part of

the publisher."  *Nakamoto v. Kawauchi*, 142 Haw. 259, 270, 418 P.3d 600, 611

(2018).  Because fault is an element of defamation, it is axiomatic that Plaintiffs

are required to rely upon communications during the social media campaign to

demonstrate Ms. Barber's state of mind, intent, and body of knowledge at the time

she made the statements.

Regarding proportionality, "[t]he parties and the court have a

collective responsibility to consider the proportionality of all discovery and

consider it in resolving discovery disputes."  *Gramercy Grp., Inc.*, 2017

WL 5179530, at *2 (quoting Rule 26(b)(1) advisory committee's note to 2015

amendment).  In *Gramercy Grp., Inc.*, the defendants sought to compel testimony

from three individuals, including the plaintiff's President/CEO, following

instructions by the plaintiff's counsel to not respond during the individuals'

depositions.  *Id*. at *1.  The plaintiff argued that the requested testimony was

protected by Rule 408 of the Federal Rules of Evidence and the attorney-client

privilege.  *Id*.  The Court concluded that because the plaintiff brought the

President/CEO's statements into the litigation and the plaintiff would not be

unduly burdened by further questioning, the requested discovery was relevant and proportional to the needs of the case. *Id*. at *2.

With respect to the attorney-client privilege, the Court in *Gramercy Grp., Inc.* noted that "[i]t is well-established that attorney-client communications must involve legal advice or services." *Id*. at *3. The Court held that the attorney-client privilege did not bar the defendants from eliciting some of the requested testimony, "merely because [the deponents] might have learned or obtained factual information or knowledge from counsel." *Id*. "It cannot use information in a[n] effort to prevail against Defendants, then assert attorney-client privilege to prevent discovery about that very information." *Id*.

Similarly, here, the communications between Ms. Barber and her attorneys are not privileged, and are relevant and proportional to the needs of the case, as they (1) shed light on the formation of Ms. Barber's false statements; and (2) are readily available for production without undue burden or expense. *See, e.g.*, *Kim*, 2017 WL 10379587, at *7 (addressing proportionality factors and holding that the defendants shall produce responsive documents, as the documents are relevant and could be produced without undue burden or expense).

As discussed above, some communications were produced during the PI Motion under Judge Gillmor's order, but that production was limited to the time period of January 5, 2016 to August 11, 2016. As the Court has held that the

relevant time period for discoverable documents is February 13, 2016 through January 31, 2018, (Discovery Order at 5-6), Ms. Barber should be ordered to produce any additional, responsive documents in this timeframe that were not previously produced.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to grant Plaintiffs' Motion and order: (1) that Ms. Barber produce documents responsive to Request Nos. 20-22; and (2) that Ms. Barber pay reasonable expenses, including attorneys' fees, incurred in bringing this Motion.

DATED:  Honolulu, Hawaiʻi, March 14, 2019.

/s/ Randall C. Whattoff
JOACHIM P. COX
RANDALL C. WHATTOFF
KAMALA S. HAAKE
CHRISTINE A. TERADA
Attorneys for Plaintiffs
OHANA MILITARY COMMUNITIES, LLC
and FOREST CITY RESIDENTIAL
MANAGEMENT, LLC