## LYONS, BRANDT, COOK & HIRAMATSU

GEORGE W. BRANDT
THOMAS E. COOK
JEFFREY A. GRISWOLD
BRADFORD F.K. BLISS
STEVEN Y. OTAGURO
STEFAN M. REINKE
PAUL R. GRABLE
EDQUON LEE
MALIA E. SCHRECK

ATTORNEYS AT LAW
A LAW CORPORATION
1800 DAVIES PACIFIC CENTER
841 BISHOP STREET
HONOLULU, HAWAII 96813
TELEPHONE: (808) 524-7030
FACSIMILE: (808) 533-3011

OF COUNSEL
SAMUEL A.B. LYONS
BEVERLY LYNNE K. HIRAMATSU
JAMES N. DUCA

March 14, 2019

**SUBMITTED VIA CM/ECF**

The Honorable Kenneth J. Mansfield
United States District Court
District of Hawaii
300 Ala Moana Blvd., C-338
Honolulu, HI 96850

Dear Judge Mansfield:

    Re:    Ohana Military Communities, LLC, et al. v. Cara Barber
                Civil No. 18-00042-KJM

Dear Judge Mansfield:

    This letter will address a discovery dispute that has arisen between Defendant Cara Barber ("Barber") and Plaintiffs Ohana Military Communities, LLC ("OMC") and Forest City Residential Management, LLC ("FCRM"). Pursuant to the agreement of the parties, letter briefs are being submitted to the court in accordance with Local Rule 37.1.

    The dispute concerns Barber's subpoena of the following records from Becker Communications, Inc. ("Becker"), a public relations firm that has been used by OMC and FCRM:

> [A]ny and all documents related to public relations services you have performed for Ohana Military Communities, LLC, Ohana Military Communities, Inc., Forest City Residential Management, LLC, or the Hunt Companies, that it is in any way related to residential housing at Marine Corps Base Hawaii, including, without limitation, proposals, contracts, agreements in writing, written correspondence, emails, surveys, survey results, focus group proposals or results, reports, press releases or other documents of any nature related to issue management, crisis communications, advertising, or other public relations services.

The Honorable Kenneth Mansfield
March 14, 2019
Page 2

Both Becker and Plaintiffs have objected to this subpoena of records on a variety of grounds. To place the current dispute in the proper context, it is relevant to briefly review the facts underlying the Plaintiffs' claims against Barber.

The primary claim asserted by Plaintiffs is that they have suffered damage due to reputational harm caused by Barber's allegedly defamatory statements made *after* the parties' February 2016 Settlement. Thus, Plaintiffs' reputation before and after the February 2016 settlement is directly at issue. Indeed, in order to support their alleged reputational harm, the Plaintiffs retained a "public relations expert," Robert Fisher, who has opined, among other things, that Plaintiffs have "suffered significant and irreparable harm and damage to their image, reputation and brand" as a result of Barber's social media activity following the settlement of her prior lawsuit against the Plaintiffs. Mr. Fisher goes on to recommend that Plaintiffs engage in a two-year "proactive reputation management/damage repair program" that he estimates will cost approximately $425,000 to $475,000.

In the prior litigation, however, Becker was specifically hired by Plaintiffs to provide public relations consulting *in response to the Barber litigation*. Thus, Plaintiffs' communications with Becker are directly relevant to Plaintiffs' reputation before the February 2016 settlement and are specifically related to the impact of Cara Barber on Plaintiffs' reputation. In light of the claims being pursued by Plaintiffs in this action, and particularly the contention that their reputations in general, as well as within the community of past, current or prospective tenants of the residential housing at Marine Corps Base Hawaii (MCBH), have sustained "irreparable harm," the records of Becker are extremely and uniquely relevant. Becker has also conducted "focus groups" or surveys among the residents of MCBH that were apparently designed to determine the general level of concern about pesticide contaminated soil and the Plaintiffs' response to that issue. The results of such work by Becker on behalf of Plaintiffs—indeed, the very fact that Plaintiffs retained Becker to conduct such surveys in the first place—is directly relevant to Plaintiffs' contention that anything posted or said by Barber has resulted in any harm to Plaintiffs' reputation.

One of the objections raised by Plaintiffs to the subpoena is that it is overbroad in terms of its subject matter and time frame. It is important to note, however, that the subpoena is specifically limited to "residential housing at Marine Corps Base Hawaii," which means that it is already limited in terms of its time frame and subject matter. To the extent that Becker has provided broader PR or advertising services to the Plaintiffs, documentation pertaining to that other work—for example, work related to other military housing projects—would be outside the scope of the subpoena. As specifically limited, however, all of Becker's work in advising the Plaintiffs with respect to public relations is relevant and changes to that advice over time are also relevant to the Plaintiffs' contention that any act on the part of Barber had a negative impact on their reputation.

The Honorable Kenneth Mansfield
March 14, 2019
Page 3

Plaintiffs also object to the subpoena served on Becker on the ground that it was retained as a "litigation consultant" with respect to the prior civil action in which Barber was one of the plaintiffs. This issue, and the privilege that Plaintiffs seek to assert as to Becker, has already been addressed by this Court in the context of Plaintiffs request for communications between Barber and one of her experts, Dr. Walter Chun. As this Court noted in its February 25, 2019 Order pertaining to communications with Dr. Chun, Federal Rule 26(b)(4)(C) "does not protect communications that a party – in this case Barber – has with her expert witness. Accordingly, communications between Barber and Chun must be produced. Because Barber intends to defend the claims against her based, in part, on conversations she may have had with Chun during *Barber I*, all such communications must be produced, regardless of time." Order at p. 7.

Like Walter Chun, Becker's public relations work for Plaintiffs has been placed directly at issue *by Plaintiffs*. In the context of the records that have been subpoenaed from Becker, Plaintiffs are making affirmative claims against Barber seeking damages in excess of $400,000 for alleged damage to their reputation, Barber must be able to access records of the Plaintiffs' PR consulting firm in order to properly defend herself against such claims.

The authorities cited by this Court in its February 25, 2019 Order are directly on point. *See, e.g., Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, Civ. No. C 17-05211 WHA, 2017 WL 4642324, at *5 (N.D. Cal. Oct. 17, 2017) ("Where a party raises a claim, which in fairness to its adversary requires it to reveal the information or communication that claim is predicated upon, it has implicitly waived any privilege over that communication." (citations omitted)). "Parties are not permitted to advance conclusions that favor their position in litigation, and at the same time shield the information that led to those conclusions from discovery." *Id.; see also Ojmar US, LLC v. Sec. People, Inc.*, Case No. 16-cv-04948-HSG (MEJ), 2017 WL 2531472, at *2 (N.D. Cal. June 12, 2017) (noting that reliance on advice-of-counsel defense waives privilege). In this case, it is believed that Plaintiffs relied directly upon public relations advice and counsel provided by Becker in determining what their reputation in the community they served was, how any action on the part of Barber affected that reputation, if at all, and how best to respond to any perceived harm to their reputation arising from soil contamination issues. Becker's work, and what Plaintiffs paid Becker for its work, is also directly relevant to the Plaintiffs' alleged damages. Under these facts there is no question that Barber is entitled to all documents and work product within the scope of the subpoena that was served on Becker.

Plaintiffs' contention that Becker's records should be protected from discovery pursuant to the work product doctrine is not well founded. Becker is a public relations firm, not a law firm, and its work included surveys and focus groups of MCBH residents to determine their general satisfaction with Plaintiffs' management of the residential properties they were living in and, presumably, their level of concern about soil

The Honorable Kenneth Mansfield
March 14, 2019
Page 4

contamination in their neighborhoods. These issues directly concern the Plaintiffs' claims that they have suffered damage from Barber's social media postings and there is no factual or legal basis to deem Becker's work as being attorney work product or work that was done in anticipation of litigation.

Becker's retention by Plaintiffs also goes directly to the issue of Plaintiffs' efforts, if any, to mitigate the damage that they allege to have suffered from Barber's social media activity. It is likely that Becker's work for Plaintiffs included advice in how best to respond to any publicity arising from the soil contamination lawsuits and the settlement of the original Barber civil action. If Becker's work for Plaintiffs revealed a significant negative impact on Plaintiffs' reputation related to the settlement of the prior litigation, and Ms. Barber's post-settlement social media activity, then presumably Becker would be listed as an expert and providing a report to that effect. Instead, Plaintiffs have retained Robert Fisher, a PR expert based in California, to opine on such issues. It is also relevant to note that Mr. Fisher was not provided with any of Becker's survey or focus group work product for the Plaintiffs, notwithstanding the fact that he is opining on issues that would be directly informed by Becker's work. The Plaintiffs' failure to provide Becker's work product to their own expert is a strong indication that the documents at issue are not favorable to Plaintiffs and may indicate why they are declining, without an order from this court, to produce the records at issue.

It was not Barber's intent to impose an undue burden on a non-party in responding to a subpoena for records that should have been produced months ago by the Plaintiffs in response to Barber's November 19, 2018 request for production of documents, which included a request for "all COMMUNICATIONS by and between YOU and Becker Communications." Plaintiffs declined to produce any records in response to this request and their failure to do so is now being presented in the context of Barber's proper attempt to obtain those records through a properly issued subpoena directed to Becker.

Very truly yours,

/s/ Bradford F. K. Bliss

Bradford F. K. Bliss

cc:   Randall C. Whattoff (via CM/ECF)
      Joachim P. Cox (via CM/ECF)
      Kamala S. Haake (via CM/ECF)
      Kyle Smith (via CM/ECF)
      Terrance Revere (via CM/ECF)